## 11086

### STATE v. BOWERS *ET AL.*

#### (115 S. E., 303)

1. CRIMINAL LAW—HOMICIDE—STATEMENTS OF DEFENDANT'S SONS CONCERNING DECEASED'S TREATMENT HELD NOT HEARSAY AND ADMISSIBLE TO SHOW STATE OF MIND.—In a prosecution for a homicide following a statement made by defendant concerning deceased, where the state was permitted to prove an altercation between deceased and two of defendant's sons the night before, in which deceased searched the sons for weapons, statements made by the sons to defendant concerning the trouble were admissible to show the state of defendant's mind toward deceased, and were not incompetent as hearsay.

2. HOMICIDE—DETAIL PERMITTED IN RELATING STATEMENTS TO SHOW STATE OF MIND IS WITHIN COURT'S DISCRETION.—The extent to which a witness may enter into details in testifying as to communications made to defendant for the purpose of showing defendant's state of mind in a homicide prosecution must be left largely to the discretion of the trial Court.

3. HOMICIDE—EXCLUSION OF STATEMENTS TO SHOW STATE OF MIND HELD NOT PREJUDICIAL IN VIEW OF VERDICT.—The exclusion of evidence as to statements made to defendant by his sons concerning their trouble with deceased, which was offered by defendant to establish his state of mind, in making a remark concerning deceased which brought on the fatal encounter, was not prejudicial to defendant, where the jury found him guilty only of manslaughter, thereby absolving him of malice.

4. HOMICIDE—PERSON ASSAULTED IN PLACE OF BUSINESS NEED NOT RETREAT.—One assaulted in his own house is not required to retreat before exercising his right of self-defense, and a man's place of business is his house within the meaning of that rule.

5. CRIMINAL LAW—REQUESTED CHARGE ON DUTY TO RETREAT IN PLACE OF BUSINESS HELD NOT COVERED BY GIVEN CHARGE.—A requested charge that a man assaulted in his place of business need not retreat before exercising his right of self-defense, was not covered by the general charge stating the law as applied to a man's house, and adding that it had been argued that the rule applied also to his place of business but not so charging as a proposition of law except by implication.

Before MEMMINGER, J. Greenville, August, 1921. Reversed and remanded.

Carol Bowers and Walter Bowers, convicted of manslaughter, appeal.

*Messrs. Dean, Cothran & Wyche,* for appellants, cite: *Communicated threats admissible to show mental attitude deceased:* 103 S. C., 277. *Court cannot disparage defense of accused:* 116 S. C., 117; 73 A. L. R., 402. *Intimation of opinion from the Court harmful:* 87 S. C., 410. *Man not under necessity to retrat in his own place of business:* 158 U. S., 562; 72 S. C., 1'4; 60 S. E., 518.

*Messrs. David W. Smoak, Solicitor,* and *Bonham & Price,* for respondent.

January 2, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The defendants were convicted of manslaughter in the Court of General Sessions, Greenville County, August term, 1921, upon an indictment charging them with the murder of Andy Wells, at Travelers' Rest, S. C., May 7, 1921.

There was evidence adduced on behalf of both the State and of the defendants tending to establish the following facts. The defendant Walter Bowers, a married man, 44 years of age, the father of nine children, lives near the village of Travelers' Rest. The defendant Carl Bowers, 21 years of age, is his son. On the evening of May 6, the normal tranquility of Travelers' Rest seems to have been disturbed by a "rucus" at a school entertainment. In connection with this disturbance, it appears that two of Walter Bowers' minor sons, 18 and 20 years of age, were searched for a pistol by a Magistrate's constable, assisted by the deceased, Andy Wells. Neither of the defendants were present at the school entertainment. The next morning the defendants went to the village to repair their Ford car in a garage owned by the defendant Walter Bowers. The

elder Bowers, in commenting on the searching of his boys the. night before, remarked that "Andy Wells was like himself, so poor he stunk," and that "he had to do something like that to get people to notice him." The ubiquitous Ransy Sniffles seems to have conveyed this remark in due course to Andy Wells at his barber shop, a quarter of a mile away, accompanied by the friendly suggestion that he wasn't game if he didn't go down and see about it."

Some time thereafter, in the early afternoon, Andy Wells, with several companions, among whom were his father and his brother-in-law, appeared in front of the defendant's garage. No explanation for this visit, other than a purpose on the part of Wells to show that he was "game," is suggested by the evidence. After Wells had been around the front of the garage for some time the elder Bowers invited him in, saying that he "wished to see him." Wells then went to the rear of the garage. According to the State's witnesses, the next development was the cursing of the elder Bowers by the deceased, Andy Wells, without a return in kind by word or act on the part of Walter Bowers, who started to walk away. His son, Carl Bowers, reacted to the cursing of his father by applying a profane epithet to Wells. Wells, who was a considerably heavier man, then knocked Carl Bowers down or toward the ground. Young Bowers came up with an iron axle with which he struck Wells a blow on the head that resulted in his death. The fatal encounter took place upon the premises of Walter Bowers and at the defendants' place of business.

The first four exceptions complain of error on the part of the trial Court in refusing to permit the defendant Walter Bowers to state what his minor sons had told him as to the treatment accorded them at the school entertainment the night before the day of the homicide. It is contended that inasmuch as the State had

been permitted to go fully into the details of the disturbance at the school entertainment for the purpose of disclosing motive and proving malice on the part of the defendant Walter Bowers, the said defendant should have been allowed to relate what his boys had stated to him in regard to the difficulty, with particular reference to the connection therewith of the deceased, Andy Wells, for the purpose of showing that the defendant's criticism of Andy Wells was not without provocation and was not prompted by "pure maliciousness." For the purpose offered we think the testimony as to the nature and tenor of the communication made to the father by his sons was admissible.

"Wherever an utterance is offered to evidence the State of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned." Wigmore on Evidence, § 1789.

"Where the question is, whether a party has acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence and not mere hearsay." *Friend v. Hamill,* 34 Md., 298, 308.

See *State v. Price,* 103 S. C. 277, 279; 88 S. E., 295.

The extent to which a witness may be allowed to enter into detail in testifying to communications of this kind, however, must be left largely to the discretion of the trial Court. In the case at bar the defendant Walter Bowers was permitted to testify that he had been told by his boys "about being searched at the school entertainment," and as to his mental attitude toward the deceased. In view of the admission of that testimony and the jury's verdict of manslaughter, which absolved the defendants of malice in the commission of the homicide, we do not think it appears that the defendants suffered such prejudice from the exclusion of the testimony as would warrant the

reversal of the judgment below upon that ground alone. For that reason the exceptions raising this point are overruled.

The defendants assign error (eighth exception) in the refusal of the trial Court to charge their fourth request as follows:

"One who is assaulted in his own house is not required to retreat before exercising his right of self-defense, and I charge you that a man's place of business is within the meaning of this rule and is deemed his dwelling, and he need not retreat therefrom in order to invoke the benefit of the doctrine of self-defense."

The request states a correct proposition of law directly pertinent under the facts to the consideration of the plea of self-defense invoked by the defendants. *State v. Marlowe,* (S. C.) 112 S. E., 291; *State v. Brooks,* 79 S. C., 144; 60 S. E., 518; 17 L. R. A. (N. S.), 483; 128 Am. St. Rep., 836; 15 Ann. Cas., 49. It is contended on behalf of the State that the proposition of law was fully covered by the general charge. A careful examination of the charge as a whole, however, fails to satisfy us that the defendants were given the benefit of a clear-cut enunciation of the principle embodied in this request. The learned Circuit Judge clearly stated the law as applied to a "man's house," that is the "law of the castle";) he further stated that "it has been argued that that applies also to a man's place of business"; but, except by implication in stating the limitations upon a person's right to eject another from his premises, the defendants' request was not charged as a proposition of law. There are aspects of the case sufficiently disclosed by the foregoing statement of facts, which constrain us to hold that the defendants were entitled to a more direct and unequivocal charge upon this point, and that the failure or refusal to give the requested instruction constituted prejudicial error.

As the conclusion announced will require the granting of a new trial, consideration of the remaining exceptions relating to alleged errors in the Judge's charge is deemed unnecessary.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

Reversed.

JUSTICES WATTS AND COTHRAN concur.

CHIEF JUSTICE GARY: I dissent, and concur in the dissenting opinion of MR. JUSTICE FRASER.

JUSTICE FRASER (dissenting). The appellants in their arguments say:

"The defendants Carl Bowers and Walter Bowers were tried before Judge Memminger at Greenville, S. C., at the August term of Court, 1921, upon an indictment charging them with the murder of Andy Wells at Travelers Rest, South Carolina, May 7, 1921. The jury found both defendants guilty of manslaughter with recommendation to mercy, and each defendant was sentenced to serve two years in the State penitentiary.

"The first four exceptions will be considered together, as they relate to the same subject-matter.

"The State, in proving its case, was allowed to go into full details and prove what occurred at a school entertainment the night before the homicide, in an effort to establish a motive and to prove malice on the part of the defendant Walter Bowers. The proof submitted by the State established the fact that two minor sons of the defendant Walter Bowers had been guilty of disorderly conduct and of carrying a concealed weapon, and the contention of the prosecution was that the defendant Walter Bowers had become angry and harbored malice against the deceased because the deceased had assisted in searching the defendant's minor sons in an effort to find the concealed weapon. The contention of the defendant Walter Bowers was that his boys had been guilty of no wrongdoing whatever and that the de-

ceased, together with others, had unlawfully and in total disregard of the rights of the minor children, laid hands upon them.  The defendant Walter Bowers testified that he made inquiry on the following morning to ascertain if his boys had been guilty of any misconduct and that he expected to punish them if he found that they were in the wrong.

"The question is: Should the defendant Walter Bowers have been permitted to relate to the jury what his boys had stated to him relative to the difficulty which occurred at the school entertainment the night before the homicide?"

The evidence as to the treatment of the Bowers children was a two-edged swòrd.  It could have been used by the State to prove malice.  It could have been used by the defendants to negative malice.  The appellants were found guilty of manslaughter, which negatived malice.  The evidence did not help tht State and was not needed by the defendants.  The admission of the testimony could not, therefore, have been prejudicial in any view of the case. The exceptions which raised this question are overruled. This disposes of the first four exceptions.

II. The next assignment of error is:

"Now, we come to the next question of the law involved in this his controversy, and that is the law of self-defense which is very easily understood and certainly if there is any truth in the old adage that practice makes perfect it is very easy for a Judge who has been upon the bench for any length of time to make it so plain and simple to any jury when called upon to charge this law in manslaughter cases that they may readily comprehend and understand the essential elements and the limitations as to the law of self-defense.  Self-defense being the right which is given to all men to save themselves from loss of life or serious bodily harm at the hands of another."

There are two specifications of error: (a) It ridiculed self-defense.  When his Honor said:  "Self-defense being

the right which is given to all men to save themselves from loss of life or serious bodily harm at the hands of another," he did not ridicule self-defense, but commended it. (b) That when his Honor spoke of manslaughter cases he expressed his opinion that the case on trial was one of manslaughter. The word manslaughter here manifestly meant homicide cases. It was not misleading or a charge on the facts.

III. The next assignment of error is in this charge:

"That in a man's house, even as to an invited guest, if some one has come into your residence as your guest or come in there for some legitimate purpose which you would not object to and then become objectionable in your residence and you seek to put him out, the idea is that you have no right to stand right then and kill him or knock him in the head and knock his brains out, but give him some reasonable opportunity to leave the premises without resorting to force unless you are called upon to do so; give him an opportunity to get out peaceably."

This is objected to as a charge on the facts. It was not a charge on the facts, but a statement of law. This exception is overruled.

IV. The next assignment of error is that his Honor failed to charge the law as to the duty to retreat. His Honor fully covered the subject, and this exception is overruled.

V. The last assignment of error is that his Honor refused to charge:

"One who is assaulted in his own house is not required to retreat before exercising his right of self-defense, and I charge you that a man's place of business is within the meaning of this rule and is deemed his dwelling, and he need not retreat therefrom in order to invoke the benefit of the doctrine of self-defense."

This request is fully covered by the general charge.

The judgment is affirmed.