15438

STATE v. OSBORNE

(21 S. E. (2d), 178)

506

September, 1941.

*Mr. Frank P. Cave* and *Mr. W. H. Harley,* both of Barnwell, Counsel for Appellant,

*Mr. B. D. Carter, Solicitor,* of Bamberg,, *Mr. Edgar A. Brown* and *Mr. Solomon Blatt,* both of Barnwell, Counsel for Respondent,

July 6, 1942..

The opinion of the Court was delivered by CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE:

The defendant above named, Sammie Osborne, was tried for murder at the September, 1941, Term of the Court of General Sessions for Barnwell County before Honorable J. Strom Thurmond, presiding Judge, and a jury, and was found guilty. His motion for a new trial having been over-ruled he was sentenced to death by electrocution; and the cause comes before this Court upon his appeal from the judgment of the Circuit Court.

It appears that on the first day of the term, to wit, September 15, 1941, the defendant Sammie Osborne and one

Girard Davis, Negro youths aged 17 and 18 years, respectively, were jointly indicted for the murder of W. P. Walker, a white farmer of Barnwell County, upon whose farm they were sharecroppers. The death of Walker was alleged in the indictment to have occurred on Sunday, August 17, 1941, from a gunshot wound inflicted by Sammie Osborne. The defendants were without counsel and the presiding Judge appointed Messrs. Frank P. Cave and W. H. Harley of the Barnwell bar to defend them. On Thursday, September 18, the case was called for trial as to Sammie Osborne, the Solicitor having elected to proceed against him only at that time (and he will be hereinafter referred to as the defendant). Thereupon a motion for a change of venue upon the ground that the defendant could not obtain a fair and impartial trial in Barnwell County was made upon certain affidavits then submitted to the Court. A number of witnesses were orally examined before the Court in opposition to the motion, and at the suggestion of counsel for the defendant one other witness was also called and examined. After hearing all the testimony Judge Thurmond overruled the motion, stating that he was convinced that the defendant could get a fair and impartial trial in Barnwell County.

The trial thereupon proceeded, and it appears from the evidence that the defendant Osborne and Davis, his co-defendant in the indictment, were working as share-croppers on the farm of W. P. Walker, and that they lived in separate houses, Osborne's house being about one-fourth of a mile and the Davis house about one-eighth of a mile from the Walker home, which was located between these two tenant houses. The homicide appears to have occurred sometime during the morning of Sunday, August 17, 1941, and the body of Mr. Walker was found in a bedroom of the Davis tenant house, at the foot of the bed, the deceased having been shot in the face with a shotgun, resulting in his immediate death.

The State relied considerably upon alleged admissions or confessions of the defendant, and these oral "confessions"

were admitted over the objection of counsel for the defendant. And during the examination of the defendant himself, a written statement admittedly signed by him was also introduced in evidence by the State over objection, and the same is as follows:

"I, Sam Osborne, make the following statement of my own free will and accord without any threats from anyone. On Saturday, August 16th, I wrote a note intended for Mr. W. P. Walker. It was written on the top of a shoe box and I placed it on a stick and stuck it up in the road so Mr. Walker would find it.

"On Sunday, August 17th, I was in bed at Neeta Davis' house (along with Guroy Davis) when Mr. Walker drove up in the yard. Guroy went to the door and he asked where I was. As he came in (Mr. Walker) he hit me with a stick twice. I got my gun from the right side of the bed where I'd placed it and shot him."

"Guroy" Davis, mentioned in this statement, was evidently intended for Girard Davis.

The note referred to in the statement, which the defendant also admitted writing, was written mainly with pencil printed capitals on a large piece of paper attached to the top of a shoe box, and is as follows:

"Come, On Mr. Plese Come On. Bring 16. at A Time Down Here In The House. Please Come On. I Like. Bad. Man Like. You. To Come.

"Sammie                                    Hell

"Osborne                                    "Hell"

There was testimony that this note was afterwards found at the home of Mr. Walker.

The defendant testified that on the day before the killing Mr. Walker forced him to work although his foot was in an injured condition, and that Walker at that time struck him with a stick and (quoting his language) "shot by my head three times" with a pistol, besides threatening him. The de-

fendant says that after this occurred he wrote the note above quoted and later in the day moved his clothes over to the Davis house, and that on the next morning he was sleeping in the bedroom there with Davis when Mr. Walker came to the Davis house and entered the bedroom, having a stick in one hand and a pistol in the other, and that he struck the defendant twice with the stick, whereupon the defendant reached for the shotgun which he had in the room and ,shot him in the face, thus causing his instantaneous death.

Of course, the foregoing statement as to the testimony in the case is quite incomplete and does not attempt to deal with any conflicts in the evidence, arising circumstantially or otherwise, but we think it will be sufficient for the purposes of this appeal.

We may, however, mention one matter which formed the basis of a motion for a mistrial made during the progress of adducing the evidence, which was refused by the trial Judge. It appears that the defendant testified that he had "rung" (or "wrung") the shell which was used in shooting Mr. Walker; that is to say, he had cut around the shell in a manner to make it more effective in certain respects (although he denied that he then had in mind the shooting of Mr. Walker). In the cross examination of the defendant on this point one of the attorneys for the State used before the jury, presumably by way of illustration, some other "rung" shell which the Court had previously excluded, and the Court again sustained defendant's objection thereto. It seems, however, that another question was nevertheless later asked with regard to the matter by State's counsel, with like exhibition of the shell, whereupon the attorneys for the defendant moved for a mistrial, alleging that the effect upon the jury was prejudicial. While the motion was refused the jury were instructed to disregard the shell which had thus been exhibited to them.

There are eleven exceptions, but counsel for appellant in their brief state the questions presented as being six in number. Actually, however, there are only five such questions dis-

cussed, because the sixth relates to the refusal of the motion for a new trial, and that motion merely repeated certain of the other grounds. Stating the questions presented briefly, and in a somewhat different order from that followed by counsel for the appellant, they charge error:

1. In refusing defendant's motion for a change of venue;

2. In admitting in evidence a purported drawing of the house where the homicide occurred;

3. In refusing defendant's motion for a mistrial on the ground hereinbefore stated;

4. In refusing to direct a verdict for the defendant; and

5. In the charge to the jury with reference to self-defense and defense of habitation.

Each of these questions will now be discussed by us.

The law as to motions for a change of venue in a criminal case is so well stated in the recent case of *State v. Thomas,* 198 S. C., 519, 18 S. E. (2d), 369, 371, opinion by Mr. Justice Fishburne, that no further citation of authority is necessary. We quote the following from this opinion:

"Where an application is made, by one accused of crime for a change of venue on the ground that an impartial jury cannot be obtained, the law devolves on the trial Judge the duty and responsibility of making an examination and informing himself of the truth of the averments in the application; and where, after hearing evidence, the trial Court is satisfied that a fair and impartial jury may be had in the county where the crime is alleged to have been committed, this Court will not reverse his judgment refusing to change the venue, unless it is made to appear that there has been an abuse of discretion."

The record in the instant case shows that Judge Thurmond's conduct measured up to the standard above stated in regard to this matter; and it is manifest that there was no abuse of discretion on his part in overruling the motion. Indeed, it is apparent that the decided preponderance of the testimony supported his ruling.

In the course of the testimony of the physician who examined the body of the deceased in the house where the homicide took place the State offered in evidence a drawing of the house and the surrounding premises showing the bedroom and the location of the body at the foot of the bed in that room. The drawing is a pencil one and does not purport to be drawn to scale. The doctor at first appeared to question the accuracy of the drawing in a certain particular, but later said that it was a correct representation of the house and the way the body was lying; and there was other evidence that the drawing was correct, although the person who made the same was not sworn. We think the objection of the defendant to the introduction of the drawing was properly overruled. The matter was so clearly one in the discretion of the trial Judge that no citation of authority is required.

We think the statement hereinbefore contained with reference to the motion for a mistrial is sufficient to show that the matter was one within the discretion of the learned presiding Judge, and that he rightly overruled the motion in the exercise of such discretion. Doubtless his view was that the incident complained of was so inconsequential as not to be really prejudicial.

Counsel for the defendant at the close of all the testimony moved the Court for a directed verdict as to the charge of murder, and the motion was refused. But in their brief they also argue that the case should not have been submitted to the jury even on the charge of manslaughter. We do not think it would be expedient or necessary for us to analyze the testimony in this opinion, especially because for the reasons hereinafter stated the case must go back for a new trial; but we believe it is sufficient to say that in our judgment the evidence was quite ample to require the trial Judge to submit the case to the jury both as to murder and as to manslaughter.

But on the fifth and last of the questions presented by this appeal as above listed we are of opinion that the Court below fell into reversible error. We quote the following from the charge of the presiding Judge, which contains all that was said with reference to self-defense, except as to the burden of proof:

"As to self-defense. I charge you that the right of self-defense is founded on the law of nature and is not superseded by the law of society. It is a right and a duty which everyone brings into society, except so far as the laws of society have curtailed it. Every man has the right, and it is his duty, to defend himself from an attack threatening him with death or serious bodily harm, and it is his duty to himself and those dependent on him to do so.

"The right of self-defense rests upon necessity, either actual or reasonably apparent, and in order to establish the plea in a homicide case, the accused must show by the preponderance of the testimony the four following elements:

"1st. That he was without fault in bringing about the fatal difficulty;

"2nd. That at the time he fired the fatal shot, he, in good faith, believed that he was in imminent danger of losing his life, or sustaining a serious bodily injury;

"3rd. That such belief was reasonable and that a reasonably careful and prudent man—a man of ordinary firmness and courage—situated in like circumstances would have reached a similar conclusion, and acted as he did, and

"4th. *Where both are on common ground, that the defendant had no other reasonable and obvious means of escape, or way of avoiding the danger of losing his life, or sustaining a serious bodily injury, except to act as he did.*" (Emphasis added.)

With the exception of the portion of this excerpt from the charge which we have italicized the same is of course correct. And the italicized portion, which relates to the fourth "element" of self-defense, would also be correct if it were warranted by the evidence. But while it is true that Judge

Thurmond did not say that as a matter of fact the deceased and the defendant were "on common ground," it is manifest that the charge was based upon that *assumption*, whereas the uncontradicted evidence shows that the homicide occurred in a house where the defendant was at the time a guest and hence lawfully entitled to be there. And there was testimony given by the defendant himself to the effect that the deceased invaded this home and attacked him. Hence it follows that whatever conflicts the evidence may disclose the defendant was clearly entitled to have the Court charge the jury that where one is attacked in the home then occupied by him he is not required to retreat but may stand his ground and repel force with force in the protection of his person, while the charge actually given may be properly construed as declaring the law which requires retreat. And moreover, the charge should have gone even further and included the law as to defense of habitation, authorizing the use of reasonable force in the ejection of a trespasser. While this is sometimes spoken of as a distinct defense it is of course cognate with self-defense. See *State v. Bradley,* 126 S. C., 528, 120 S. E., 240, 243, where the Court quotes the following with approval:

" 'If one is violently attacked in his home, or any member of his family, without retreating, he may not only instantly use such force as may be necessary to protect himself, or family, from the loss of life or serious bodily injury, or against the perpetration of a felony, but he may in addition thereto combine such force as is necessary to eject the assailant, whom he may kill if this extreme measure appears unavoidable.' Bishop's New Cr. Law (8th Ed.), § 859, subd. 3."

Counsel for the State argue, however, that the rule we have just sanctioned is not applicable because the defendant was not at his own home but in the Davis home and that "castle rights" do not apply to guests, adverting to the fact that there is no South Carolina case on the subject. But while this point does not appear to have heretofore

come before this Court there are several cases decided by the Courts of other jurisdictions uniformly holding, so far as our investigation shows, that a guest is treated for the time being as though he were the householder. The following appears to be a clear statement of the rule and is quoted from the annotation in 25 A. L. R., 522, the same being supported by a number of citations from the Courts of various states:

"A guest of the householder is entitled to the protection that the law affords to the more permanent occupant or to the owner, and may .repel trespasses in or upon the house, or repel assaults, actual or menaced, as if he were under his own roof or within his own doors."

We also quote the following from 26 Am. Jur., 271: "As a general rule, any occupant of a dwelling house may exercise the right of taking the life of an intruder who threatens personal violence therein. The master, a servant, a lodger, or a guest of the householder, is within the rule, and may repel trespassers in or upon the house, or repel assaults, actual or menaced, as if he were under his own roof or within his own doors."

And aside from authority we think the rule as stated has a sound basis in reason and common sense.

In the brief of counsel for the State they question the propriety of this holding upon the ground that if it be correct "any passerby may walk into the house of another and there assert equal rights with the occupant owner as against all others." But such a mere "passer-by" would appear rather to be a trespasser than a guest.

It it also argued by counsel for the State that there was no error in the Judge's charge, especially because the defendant had issued a challenge to the deceased in and by the note above quoted, and hence that the law of mutual combat was applicable rather than the principle of immunity from the law of retreat or the defense of habitation. But even if there are facts and circumstances disclosed by the evidence which might tend to support this view, yet on the other hand the

defendant himself testified that after writing the "challenge" he went to the Davis home so as to get away from Mr. Walker. He says: "I moved out, for I didn't want to come in contact with him." Of course the trial Judge was not concerned with any conflicts in the evidence, but we think the charge should have included at least a general statement of the law relating to all the defenses indicated by the testimony or any part thereof.

The suggestion or argument that the parties might have been considered on "common ground" because the house where the homicide occurred was on Walker's own place and the defendant (as well as Davis) was a mere sharecropper or laborer is, we believe, without merit. It is true that a sharecropper is generally considered a laborer, but where he is provided with a house to be occupied by him he should certainly have all the rights with reference to that house that an ordinary tenant would have against his landlord and others. In other words, the mere fact that he is a sharecropper living on the farm where he works should not deprive him of his home or castle rights. Section 8812, Code 1932, relating to the ejectment of tenants at will also includes tenancy where one is in the occupancy of any land or tenement under contract to serve another either as a domestic servant or common laborer; and this seems to be a clear recognition that a tenancy exists in such cases.

It is further contended that if the Court committed any error in the charge it was merely by way of inadvertent omission or failure to elaborate, and since the matter was not brought to the attention of the Court by counsel for the defendant, although they had an opportunity to do so, and no request to charge was submitted, the point should be held to be waived. But we do not think the rule invoked is applicable here, because as we have already indicated the charge appears to have been based upon an assumption which overlooked so much of the testimony (whether true or untrue) that it could not be said even to be a general explanation of so much of the criminal

law as is applicable to the issues made by the evidence. In the case of *State v. Faulkner*, 151 S. C., 379, 149 S. E., 108, the Court says:

"No citation of authority, of course, is necessary to support the proposition that, where the trial Judge makes a correct general charge of the law applicable to the case as made by the evidence, a party desiring more detailed instructions must make request therefor. That rinciple, however, has no application in the case at bar. The 'right to eject' is a distinct defense, and, if a charge as to the law governing this right was applicable to the case, the defendant was entitled to such charge, whether he requested it or not."

See, also, the more recent case of *State v. Brice*, 190 S. C., 208, 2 S. E. (2d), 391. Furthermore, the rule requiring a request for further instructions may properly be relaxed in favorem vitae. Indeed, it was held in the case of *State v. Bigham*, 133 S. C., 491, 131 S. E., 603, that in a capital case this Court will take notice of any error apparent on the record affecting the substantial rights of the accused, even though not made a ground of appeal; and there are many other authorities to a like effect. And in the case of *State v. Grant*, 199 S. C., 412, 19 S. E. (2d), 638, 648, it is appropriately said that it is "the duty of an Appellate Court in a capital case to search the record for prejudicial error."

Some of the exceptions were not argued by counsel for appellant, and hence may be deemed to have been abandoned. We have, however, considered them, and in our opinion they are without merit. We therefore sustain exception (8), relating to the Judge's charge, and overrule all the other exceptions.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.

Reversed and remanded.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES concur.

CIRCUIT JUDGE A. L. GASTON, ACTING ASSOCIATE JUSTICE, concurs in result.

CIRCUIT JUDGE A. L. GASTON, ACTING ASSOCIATE JUS-
TICE (concurring in result) :

I wish to add briefly to the leading opinion somewhat,
and trust that it will not be amiss or presumptuous to do so.
I fully concur in the result of the opinion, and have also re-
read the cases of this State on the subject. "One attacked,
without his fault, on his own premises, has the right, in
establishing his plea of self-defense, to claim immunity from
the law of retreat, which ordinarily is an essential element
of that defense." If he is without fault in bringing on the
fatal difficulty he does not have to retreat, if he is upon his
own premises, in order to establish the plea of self-defense,
if he is assaulted by another, and is not himself the aggres-
sor, and if he successfully establishes the other elements of
self-defense.

I am satisfied that under the law of this State the defend-
ant was entitled to the above charge. He and the deceased
may both be on his own premises respectively. Neither one
was in his own dwelling nor within the curtilage. Neither
would have the right to eject the other. The law of. the
domicile would not be applicable. The defendant, in my view
of the law, even if he was a guest in another's home, could
not invoke the law of the domicile and could not invoke the
right to eject an intruder. But the defendant as a tenant on
the farm was on his own premises under the law and does
not have to retreat in order to invoke the right of self-de-
fense, if he be without fault on his part.

Quoting further from the case of *State v. Gordon,* 128
S. C., 422, at page 427, 122 S. E., 501, 503 : "But where
one on his own premises, without fault on his part, is at-
tacked by another, he is not bound to retreat because he
may have no legal right to eject his assailant from the place
where the assailant happens to be. Thus, in *State v. Gibbs*
[*infra*], where 'both combatants were charged with being
assailant, and each was on his own place,' the defendant was
properly held entitled to the instruction that he was not
bound to retreat if assaulted, but could stand his ground

and 'meet such attacks even to killing his assailant.' Obviously, the defendant in that case had no right to eject his adversary from the adversary's own premises. The right to eject test was not applicable there and for the same reason it is not applicable here."

The law in regard to fellow employees or co-tenants, or land owners residing on his own farm and his employees or sharecroppers residing thereon, or while engaged in working thereon, makes them joint occupants of the premises, and each joint occupant, being equally entitled to possession, need not retreat when attacked without his own fault by the other joint occupant, while they are in the same building, where they work together, or even in the same club house, or upon the same farm or premises where both also reside and work. *State v. Gibbs,* 113 S. C., 256, 102 S. E., 333; *State v. Marlowe,* 120 S. C., 205, 112 S. E., 921; *State v. Bowers,* 122 S. C., 275, 115 S. E., 303; *State v. Bradley,* 126 S. C., 528, 120 S. E., 240; *State v. Gordon,* 128 S. C., 422, 122 S. E., 501; *State v. Quick,* 138 S. C., 147, 135 S. E., 800.

In either view of the law it seems clear that the defendant is entitled to the benefit of the proposition of law as stated in the exception.