The STATE of Utah, Plaintiff
and Respondent,

v.

Gary Alfred MITCHESON, Defendant
and Appellant.

No. 14629.

Supreme Court of Utah.

Feb. 15, 1977.

Don Blackham, of Blackham & Boley, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Ronald B. Boutwell, Carbon County Atty., Price, for plaintiff and respondent.

CROCKETT, Justice:

The defendant, Gary Alfred Mitcheson, was convicted of murder in the second degree for shooting Richard Herrera in the front yard of 432 South Fourth East, Price, Utah, at about 3:30 a. m. on February 7, 1976. He was sentenced to a term of five years to life in the state prison.

On his appeal the point of critical concern is his charge that the trial court erred in refusing his request to instruct the jury on the defense of using force in the protection of one's habitation.[1]

The deceased, Richard Herrera, sold his car (a 1967 Chevrolet van) to Alfred Mitcheson, defendant's father, on December 15, 1975. The original wheels and tires had been changed for what are called "Mag Wheels" and tires, which have a wider tread. Some time after the father had taken possession of the van, a dispute arose between the parties over those wheels. The father, supported by the defendant, claimed that they had been included in the sale, but the deceased and his brother, Ernie Herrera, claimed they only agreed to loan the "Mag Wheels" and tires temporarily.

On several occasions in January, 1976, the two brothers requested that the wheels and tires be returned, but the defendant and his father did not comply. On one of those occasions the Herrera brothers and some friends went to the father's home to remove the wheels. The father protested and called the police. When they arrived they told the Herreras, the deceased and his brother, to leave the wheels alone and that any disagreement should be settled by going to court.

A few days thereafter, on February 6, 1976, the defendant was parked in the van at a drive-in restaurant when the deceased came up to the van, opened the door and hit the defendant on the jaw and eye; and made threats to the defendant to the effect that I will "put you under." A couple of hours later the defendant and some of his friends went to the home of Jerry Giraud, where they saw the deceased's car parked. There was a conversation in which the defendant offered to fight the deceased, which was then refused. But, they agreed to meet in the town park and fight at 2:00 o'clock the next afternoon.

Defendant and his friend, Wendell Johnson, drove to his father's house, where the defendant obtained a rifle. He and Johnson then arranged for a poker game to be held at the home of defendant's sister, Debbie, and went there in the van where they proceeded to play cards. Still later that night, at about 3:30 a. m., the deceased, Richard Herrera, and some of his friends drove up to this house for the stated purpose of removing the wheels from the van. When they entered upon her premises Debbie told them to leave. They did not comply. A considerable commotion ensued, including her screaming at them to get off her premises. Defendant came to the doorway of the house with the rifle. He fired a shot and Richard Herrera fell with a bullet wound in his neck from which he shortly expired.

The essence of the defense, and the basis for the requested instructions, was that the defendant was using the rifle as a backup resource in protection of the peace and security of his habitation and that its discharge and the striking of the deceased was an accident. The argument that the defendant was not entitled to that instruction

is: (1) that the sister's home was not his habitation; and (2) that it was inconsistent with his own testimony and theory of defense that the shooting was an accident.

### Defense of Habitation

The pertinent statute is 76–2–405, U.C.A. 1953, which provides in part:

A person is justified in using force against another when and to the extent that he reasonably believes . . . necessary to prevent . . . other's unlawful entry into or attack upon his habitation; however, he is justified in the use of force which is intended to cause death or serious bodily injury only if:

(1) The entry is made or attempted in a violent and tumultuous manner and he reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person, dwelling or being therein . . . .

That statute has its roots in the ancient and honored doctrine of the common law that a man's home is his castle, and that even the peasant in his cottage, may peaceably abide within the protective cloak of the law, and no one, not even the king nor all his armies can enter to disturb him.[2]

In view of the salutary purpose of that statute, of preserving the peace and good order of society, it should be interpreted and applied in the broad sense to accomplish that purpose. Thus it would include not only a person's actual residence, but also whatever place he may be occupying peacefully as a substitute home or habitation,[3] such as a hotel, motel, or even where he is a guest in the home of another;[4] and so would apply to the defendant in his sister's home.

### Issue of the Inconsistent Defenses

It is our judgment that the position of the defendant: that he was defending what he regarded as his habitation, is not necessarily inconsistent with his assertion that the discharge of the gun and the striking of the deceased in the neck was an accident. Furthermore, even if they were inconsistent, that should not deprive the defendant of either defense.

In a criminal case the defendant need not specially plead his defenses. The entry of a plea of not guilty places upon the State the burden of proving every element of the offense beyond a reasonable doubt.[5] This gives the defendant the benefit of every defense thereto which may cause a reasonable doubt to exist as to his guilt, arising either from the evidence, or lack of evidence, in the case; and this is true whether his defenses are consistent or not.[6]

On the basis of what has been said herein, it is our opinion that if the requested instruction had been given and the jury had so considered the evidence, there is a reasonable likelihood that it may have had some effect upon the verdict rendered. Therefore the defendant's request should have been granted. Accordingly, it is necessary that the judgment be reversed and

---

**2.** See *Semayne's Case* (1604) 5 Coke 91, 77 Eng. Reprint 194, where it was stated that "the house of everyone is to him his castle and fortress, as well for his defense against injury and violence, as for his repose; and although the life of a man is a thing precious and favored in law . . . if thieves come to a man's house to rob him, or murder, and the owner or his servants kill any of the thieves in defense of himself and his house, it is not felony and he shall lose nothing . . . (citing other older authorities)."

**3.** *Smart v. State,* 244 Ind. 69, 190 N.E.2d 650; *Huff v. State,* 113 Ga.App. 257, 147 S.E.2d 840; 40 C.J.S. Homicide § 109.

**4.** As to the guest in another's home, see *State v. Osborne,* 200 S.C. 504, 21 S.E.2d 178.

**5.** *State v. Hendricks,* 123 Utah 267, 258 P.2d 452; *State v. Renzo,* 21 Utah 2d 205, 443 P.2d 392.

**6.** *People v. West,* 139 Cal.App.2d Supp. 923, 293 P.2d 166; *Whittaker v. U. S.,* 108 U.S.App. D.C. 268, 281 F.2d 631; *State v. Lora,* 305 S.W.2d 452 (Mo.); 22 C.J.S. Criminal Law § 54. In this regard compare Rule 12(b), U.R.C.P.,

that the case be remanded for a new trial.[7] No costs awarded.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

which provides that there may be inconsistent defenses in civil cases.

**7.** That upon reversal for error defendant is not entitled to go free, but to a new trial, see *State v. Lawrence,* 120 Utah 323, 234 P.2d 600; *United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627.