15529

STATE v. OSBORNE

(25 S. E. (2d), 561. See also 200 S. C., 504, 21 S. E. (2d), 178)

Septem-
ber, 1942.

*Mr. John E. Stansfield,* of Aiken, S. C., Counsel for Appellant,

*Mr. B. D. Carter,* Solicitor, of Bamberg, S. C., and *Mr. Edgar A. Brown* and *Mr. Solomon Blatt,* both of Barnwell, S. C., appeared as Counsel for the State, Respondent.

MR. ASSOCIATE JUSTICE BAKER delivered the unanimous opinion of the Court:

At the September, 1942, term of the Court of General Sessions for Barnwell County, the appellant was placed on trial for the second time on an indictment duly found by a grand jury of said county, charging him with the murder of one W. P. Walker on the 17th day of August, 1941. The appellant was first tried on this charge at the September, 1941, term of the Court of General Sessions for Barnwell County, was by a petit jury found guilty of murder without recommendation to mercy, and was sentenced by the presiding Judge to death by electrocution. Upon an appeal to this Court, the conviction and sentence were set aside, and the appellant granted a new trial. See *State v. Osborne*, 200 S. C., 504, 21 S. E. (2d), 178, 181. The second trial of appellant likewise resulted in a conviction of murder without recommendation to mercy, and the imposition of a sentence of death by electrocution.

The appellant was ably represented at both trials by Frank P. Cave, Esq., an attorney practicing at the Barnwell, S. C., bar. Mr. Cave was appointed by the Court when it was ascertained that the appellant was without counsel. On this appeal, however, the appellant is represented by other counsel, privately employed.

The appellant by ten exceptions alleges error in the trial of his case, but in the argument of the appeal in this Court these exceptions are correctly stated to present only three questions phrased in his printed brief as follows:

"1. Did Judge Grimball err in refusing to direct a verdict of not guilty as to either murder or manslaughter, and did Judge Grimball err in refusing to set aside the verdict because of the absence of testimony to support the verdict of guilty of murder?

"2. Did Judge Grimball err by employing the term 'Killer,' while charging the law of malice, self-defense and the law of the habitation?

"3. Did Judge Grimball, in charging the law of self-defense and the law of the habitation, err by constantly al-

luding to the doctrine of retreat and to the rights of persons on common ground or in the highway and did the giving of such inapplicable principles in charge confuse and mislead the jury?"

The testimony at the second trial of appellant was in effect the same as in the first trial, with some additional testimony in the second trial which tended to show malice and ill will and conditional threats on the part of the appellant towards the deceased. One of the exceptions to this Court on the first appeal was that the trial Judge erred in failing and refusing to grant the motion of appellant for a direction of verdict of not guilty as to murder. The Court in passing upon this exception, stated: "Counsel for the defendant at the close of all the testimony moved the Court for a directed verdict as to the charge of murder, and the motion was refused. But in their brief they also argue that the case should not have been submitted to the jury even on the charge of manslaughter. We do not think it would be expedient or necessary for us to analyze the testimony in this opinion, especially because for the reasons hereinafter stated the case must go back for a new trial; but we believe it is sufficient to say that in our judgment the evidence was quite ample to require the trial Judge to submit the case to the jury both as to murder and as to manslaughter." *State v. Osborne, supra.*

We will briefly review the testimony. It appears that there was friction between the deceased and the appellant over the failure of the appellant to willingly work on three successive Saturdays prior to the homicide. The testimony of appellant informs us that on the third Saturday prior to the date of the homicide (Sunday, August 17), the deceased "drove me (him) to the tator field with his pistol;" that on the second Saturday before, the appellant remained in bed alleging that he was sick; and that on the Saturday before the homicide the appellant claimed to have a sore foot, and that the deceased came to his house and, with a pistol, drove him to the field to pull fodder; that he pulled three

stalks of fodder, whereupon the deceased hit him, snapped a pistol in his face, and when he ran, snapped the pistol at him three times more; that he (appellant) went to his home and got his clothes, money and gun (the gun with which the homicide was committed), and carried his clothes to the home of Neetsie Davis, another tenant on the farm of the deceased, this being the house in which the homicide occurred the following morning.

It does not clearly appear when the appellant carried his gun to the Davis home except that it was on the same Saturday, the day before he shot and killed Walker, and after he had written and posted the note, challenge or invitation hereafter referred to, in a conspicuous place near the home of the deceased, intending that it should be seen by the deceased. The appellant freely admitted that he knew when he stuck the note or challenge on a stick and placed it where he did, Mr. Walker would see it.

Although admitting that he had six shells for his gun, the appellant then went to the store of a Mr. Odom where he tried to buy some gun shells, and failing to get them there, he went to Blackville, and from there to Elko and to Williston, and was still unable to procure any shells. According to appellant's testimony, he was undertaking to procure these shells for a Davis boy with whom he was sleeping on the morning of the homicide, so that they could go hunting.

The note or challenge posted by the appellant near the home of the deceased was written with pencil printed capitals on a large piece of paper attached to the top of a shoe box, and is in the following form:

"COME, ON MR. PLESE COME ON. BRING 16. AT A TIME DOWN HERE IN THE HOUSE. PLESE COME ON. I LIKE. BAD. MAN LIKE. YOU. TO COME
"SAMMIE  }
"OSBORNE }
                    HELL
                    ‾‾‾‾‾
                    HELL"

There was testimony that this note or challenge was, following the homicide, found in the home of the deceased.

The appellant did not return to the farm of the deceased until early Sunday morning, August 17, 1941, and when he did, he went to the home of the Davis woman where he had carried his clothes and gun on the day before, and went to bed. The appellant further testified that while in this bed, at about eleven or twelve o'clock, he was attacked with a stick by Mr. Walker; that he (appellant) grabbed the stick and snatched it; whereupon Walker stepped back as though to get off from the wall, snatched out a pistol, and hit him (appellant) twice (presumably with the stick). Appellant then reached and got his gun which was leaning up near the bed and shot Mr. Walker in the head. On cross examination, the appellant, after testifying that Walker had the stick in his left hand and a gun (pistol) in his right hand, stated: "I got the stick and he stepped back and he stepped back again and he grabbed the stick and wheeled and that time I shot him." It is undisputed that Walker then and there died.

All of the foregoing facts, with the exception of where the note or challenge was found following the death of Mr. Walker, are taken from the testimony of the appellant.

The body of the deceased was found in the room in the home of Neetsie Davis where the appellant was a guest, and near the body was a stick and a pistol. There were no bruises on the appellant.

The appellant predicates his asserted right to a directed verdict of not guilty on the law of self-defense and that of defense of one's place of habitation.

The defense of self-defense is based upon necessity, ██ and is a perfect defense when established by the greater weight of the evidence. One pleading self-defense in the taking of the life of another must ordinarily show four elements, but under the facts of this case, the appellant being a guest in the home and room where the homicide occurred, had to show only three elements, and we

need refer to only the first element, to wit, that one who pleads self-defense must show by the greater weight of the testimony that he was without fault in bringing on the difficulty. It may be conceded that the appellant established the other two elements.

Following an altercation with Walker, the appellant publicly posted an invitation or challenge to Walker in such language as to imply that if the invitation or challenge was accepted, Walker would suffer serious bodily harm or death. The invitation or challenge was to come to the *house* of the appellant. The appellant, already in possession of six shells, undertook to purchase additional shells, and when he finally lay himself down to sleep early Sunday morning, less than twenty-four hours after issuing the challenge, in a tenant house located a very short distance from the house he had been occupying, and on the farm of Mr. Walker, he placed his loaded gun within his reach from the bed upon which he slept.

In *State v. Bradley*, 126 S. C., 528, 120 S. E., 240, Mr. Justice Cothran, in writing the opinion of the Court, entered into a learned discourse of the law of habitation in which he covered practically every phase of the governing law, and the trial Judge in this case used almost the identical language of Mr. Justice Cothran in his charge upon this defense.

In speaking of the defense of habitation in *State v. Osborne, supra,* Mr. Acting Associate Justice Lide, in writing the opinion of the Court, stated: "While this sometimes spoken of as a distinct defense it is of course cognate with self-defense."

As already noted, the invitation or challenge was to come to the *house* of the appellant. He had no greater or less rights in the house where he was a guest than in his own house, and the two houses were located so near to each other, on the same farm, as to make it hypercritical to draw the distinction that the challenge did not extend to

the Davis house insofar as the appellant was affected, and this is so notwithstanding the testimony of the appellant that he became afraid after writing the note or challenge, and for this reason moved from the house he had been occupying to the home of Neetsie Davis.

In the light of the testimony the applicable legal principles involve an admixture of the law of habitation and mutual combat. The appellant nevertheless received the benefit of a full and able charge to the jury of the law of habitation, without qualification by any charge on the law of mutual combat.

The State was not in a position to offer testimony as to what occurred in the room in the Davis home where the deceased was killed, and the only testimony as to what took place therein was that of the appellant.

Where, as in this case, the State has shown animus, a challenge by appellant to Mr. Walker written and posted shortly after a difficulty between them, an apparent preparation on the part of the appellant for the difficulty invited by him, and the use of the deadly weapon in the taking of the life of the deceased, it was for the jury to decide whether the appellant had established by the greater weight of the testimony his two defenses, (1) self-defense and (2) the defense of habitation. It was likewise a jury question, rather than a question of law for the trial Judge on the motion for a direction of verdict, to determine whether the homicide constituted murder or manslaughter.

Admittedly, if it were affirmatively shown that the appellant had formed the determination to kill the deceased, but to do so in such manner as to conceal this purpose, a conviction of murder would not be prevented by the fact that it developed that one of the elements of appellant's scheme was to lure the deceased into the former's place of abode. The fact that appellant succeeded in luring the deceased into the former's abode by daring him to come there would not differentiate the case, in this light, from what it would have

been if the appellant had brought about the meeting at some other place. This being true, it is only necessary for us to determine whether under all of the testimony the jury could reasonably conclude that such a scheme had been formulated by the appellant. In our view, the testimony hereinbefore related is reasonably susceptible of such a conclusion. The necessary result of the adoption of this view, under the correct statement of the applicable law as given by the trial Judge in his charge, was the creation of a situation in which the jury reasonably could, as it did, find the appellant guilty of murder. In other words, considering the testimony as a whole, it was for the jury to say whether the correct inference from the testimony was the one above indicated, or whether they should accept or believe the appellant's statement as to what his intentions and purposes were.

It seems to us that the appellant's exceptions relating to the use of the term "killer" in the charge of the trial Judge to the jury are captious. In his lengthy charge covering every phase of the applicable law, the trial Judge used this word four times, and in each instance he was instructing the jury as to the law in the abstract rather than as applied to the factual situation before the Court.

In charging the law of malice, the trial Judge stated: "In order to make out the charge of murder, it must be made to appear that the malice accompanying the unlawful killing of a human being existed in the heart of the killer for some appreciable time before the fatal shot was fired. The law does not say for a year or a month or a week or a day, or any definite period of time. The law uses the word, 'aforethought' and the law says 'aforethought' means for some appreciable time, so that, whenever and wherever there has been an unlawful killing of a human being, accompanied by malice, in the heart of the killer, and that malice having been in his heart for some appreciable time before the fatal shot was fired, a murder has been committed." Perhaps it would

have been better had the trial Judge stated "in the heart of him who kills;" instead of "in the heart of the killer," but we must assume that the jury was composed of men of sufficient intelligence to fully appreciate that the trial Judge was not referring to the appellant as a "killer." Especially is this true where, as in this case, the trial Judge had already by forceable language impressed upon the jury that "Sammie Osborne, the defendant, comes to this Court this morning, presumed by law to' be innocent;" and that this presumption followed him throughout his trial, and until twelve men shall have come to the conclusion beyond a reasonable doubt that he was not innocent, but that he was, in fact, guilty of the crime as charged in the indictment.

In charging the law of self-defense and habitation, the trial Judge stated to the jury: "* * * If one, on the other hand, is the occupant of his own home or if he a guest in the home of another and at that time and place, either as the occupant of his own home or as the guest of another, if, at that time and place, the fatal shot was fired, which resulted in death and the killer claims self-defense, he is required to make out three things instead of four. Now, I shall define to you these elements of the plea of self-defense and some of them—three of them apply to where the killing takes place, where they stand, upon common ground and also to where the killing takes place in the home or when one is a guest in another's home. Three of them apply to both places. One of them applies to where the killing takes place on common grounds, the highway, or open field, but does not apply to where the killing takes place in the home, or where the killer is either the occupant of his own home or is the guest in the home of another."

What we have said above with reference to the use of the word or term "killer" in charging the law of malice is apposite here, except that the phrase "the one who kills" or "him who kills" would possibly have been preferable. However, such difference in the use of words is without distinc-

tion, and could in nowise have had any effect on the minds of the jury in their deliberation.

We fail to recognize any relevancy in the holdings of this Court in *State v. King,* 158 S. C., 251, 155 S. E., 409, and in *State v. Ferguson,* 91 S. C., 235, 74 S. E., 502, to the issue under discussion.

In the *King case* (158 S. C., 251, 155 S. E., 424) "the (trial) court dwelt upon the social and moral aspect of the offense with which the appellant was charged and continually spoke of the appellant and the deceased in the social and moral relation of husband and wife instead of the legal relation of defendant and deceased, thereby impressing upon the mind of the jury that a husband charged with killing his wife was not to be tried by the same rules of law and evidence that governed in other cases of homicide," and exceptions thereto were upheld by this Court under the authority of *State v. Ferguson, supra.* In the *Ferguson case* the presiding Judge at the trial repeatedly referred to the deceased and the defendant as father and son. In sustaining exceptions thereto, the Court stated ( 91 S. C., 235, 74 S. E., 504) : "* * * Such a reference to the parties, though in accordance with the facts, was, nevertheless, unfortunate. While it may not have had any weight with the jury, it may have impressed upon them the idea that a son was not entitled in law to the same right of defending himself against an unlawful attack of his father as against that of any other person. The law is no respecter of persons. Whatever we may say or think as to the social and moral aspect of the case, the law gives a son the same right to defend himself against the deadly assault of his father that it does to defend himself against the unlawful and deadly attack of any other person. In such a case the son is entitled to be tried by the legal rather than by the social and moral standard * * *."

In this case, the trial Judge, except when charging the applicable law in the abstract, referred to the appellant at all times as the defendant.

We now come to the last and third issue. Did the trial Judge, in charging the law of self-defense and the law of habitation, err by alluding to the fourth element of self-defense (the necessity of retreating), and to the rights of persons on common ground or in the highway?

The trial Judge correctly charged the law of self-defense as applicable to the facts of this case, stating fully and learnedly the three elements necessary for the appellant to show (by the greater weight of the evidence) in order to establish this defense. And in charging these three elements of the law of self-defense, he stated that these elements also applied to one pleading self-defense, where the killing took place on common ground. He then charged the fourth element of the plea of self-defense, but prefaced his charge as to this element as follows: "Now, the fourth element of the plea of self-defense applies to the case where the killing occurs on common ground, such as a highway or open field, but it does not apply where the killing took place inside of a house— inside of a home. It does not apply where the man who pleads self-defense was a guest in the home of another." And immediately following the charge on the law of this (fourth) element, the trial Judge stated: "* * * That applies as I told you where the shooting took place on common ground, such as on the highway or out in the fields, but one who shoots in his own house and pleads self-defense is not required to retreat and a guest, says our Supreme Court, in another person's home, who gets in some altercation and shoots another and kills him and pleads self-defense is not required to retreat and our Supreme Court has stated the law on that, in this way.

. "Our Supreme Court says, when the occupant—that means the occupant of the house and includes not only the owner of the house, but a guest in the house—when the occupant is the slayer and stands upon his right of self-defense, claiming not the right to protect his habitation, but claiming immunity from the laws of retreat, which ordi-

narily is an essential element of the plea, the rule is as follows:

" 'If one is violently attacked in his home, or any member of his family, without retreating, he may not only instantly use such force as may be necessary to protect himself, or family, from the loss of life or bodily injury, or against the perpetration of a felony, but he may in addition thereto combine such force as is necessary to eject the assailant, whom he may kill if this extreme measure appears unavoidable.'

"So, gentlemen, where the killing took place in a home, where the one who did the killing was either the owner or occupant of the house or was the guest and where that person sets up the plea of self-defense, he has the burden of satisfying the jury of three things, in order to make out the plea of self-defense. He must satisfy the jury that he was without fault in bringing on the difficulty. He must satisfy the jury that it appeared to him to be necessary to fire the fatal shot in order to save himself from serious bodily harm or death and he must satisfy the jury that if a man of ordinary courage, bravery, firmness and judgment had been standing in his shoes at that time and place, that that man also would have been warranted in firing the same shot in order to save himself from bodily harm or death. He must satisfy you of those three things in order to make out the plea of self-defense and I have already told you and explained to you and will tell you again, that it is not necessary that when one is an occupant of a house, either as owner or as a guest, it is not necessary for him to retreat at all and he hasn't got to retreat, if he is attacked. Now, so much then, for the plea of self-defense."

We believe that it will be obvious from so much of the charge as we have quoted above that the jury could not have become confused or misled by the charge relating to the fourth element of the plea of self-defense.

In the former appeal of this case, this Court held that it was error for the trial Judge to charge the said fourth element of self-defense—that is, the law of retreat—but such holding was based upon the fact that the charge implied that the appellant and the deceased were upon common ground; and that the appellant was not given the advantage of a charge on the law of habitation. In the present appeal, the law of habitation was fully and ably charged, and the jury was time and again informed and instructed that situate as the appellant was, he did not have to retreat, but could meet force with force, and not only that, "but he may in addition thereto combine such force as is necessary to eject the assailant, whom he may kill if this extreme measure appears unavoidable."

There is no claim on the part of the appellant that in any other respect the instructions given the jury were incorrect. Indeed, the trial Judge was meticulous in making his charge to the jury full from appellant's standpoint, and in otherwise protecting the rights of the appellant throughout the trial.

A careful study of the record discloses no error of law prejudicial to the appellant in the trial of the case.

All exceptions are overruled, and the judgment and sentence appealed from affirmed.

Mr. Chief Justice Bonham, Messrs. Associate Justices Fishburne and Stukes concur.