15762

JONES v. ELBERT *ET AL.*
(34 S. E. (2d), 796)

554

*Messrs. Williams & Busbee,* of Aiken, S. C., Counsel for Appellant,

*Messrs. Hendersons and Salley,* of Aiken, S. C., Counsel for Respondents,

August 1, 1945.

BAKER, Chief Justice: This is an action in tort for damages, actual and punitive, alleged to have been suffered by the appellant when the respondent, Martin, the general man-

ager of a dairy and farm owned and operated by his co-respondent, Mrs. Elbert, on the 15th day of March, 1942, committed assaults and batteries upon him.

Upon a trial of the case, the trial Judge directed a verdict in favor of Mrs. Elbert, but submitted the issues to the jury as to Martin. The jury rendered a verdict in favor of appellant for $200.00 actual damages and $200.00 punitive damages against this respondent.

The appellant alleges error by the presiding Judge (1) in his conduct of the trial by reason of taking part in the examination of the appellant while he was on the witness stand; (2) in directing a verdict for the respondent, Mrs. Elbert; (3) in his charge to the jury; and (4) in overruling motion for a new trial.

We will first pass upon the alleged error in directing a verdict in favor of Mrs. Elbert, which requires a summary of the testimony on behalf of plaintiff-appellant.

The respondent, Mrs. Elbert, is, or was at the time hereinafter referred to, the owner of Aiken Guernsey Farm, and her co-respondent, Thomas L. Martin, was the general manager of this dairy and farm. Prior to March 15, 1942 (the date of the alleged assaults and batteries), Mrs. Elbert decided to equip her dairy with a modern refrigerating plant for the preservation of milk and dairy products. Mr. Martin, representing Mrs. Elbert, entered into the contracts therefor, and paid the contractors. The contract for the refrigerating system was let to Jones-George Electric Company, of which appellant, W. O. Jones, was principal owner and general manager; and the contract for the plumbing in connection therewith was let to a Mr. George, who had no connection with Jones-George Electric Company.

The plant as installed did not work satisfactorily. Complaints were made to Jones-George Electric Company, and on two or more occasions prior to the incident out of which this action arose this company had sent its representatives

or employees out to the farm for the purpose of ascertaining and removing or remedying the cause, but to no avail. On the night of March 14, 1942, Martin 'phoned to Jones (the respondent) and requested that he come out and correct the defect or trouble, and Jones promised that he would be out the next morning (Sunday morning, March 15.) In accord with his promise, the respondent and two of his employees went to the dairy, and upon an examination reached the conclusion, as stated by Jones, that the defect and trouble was in the plumbing for that one-half inch pipe had been installed instead of one-inch pipe, and therefore the water inlet was too small to cool the machinery. Martin chanced to go into the dairy while Jones and his men were there, and when Jones informed Martin that the fault was in the plumbing, and "to call in his plumber," a dispute arose between them as to whose duty it was to correct the plumbing, each using the expletive "damn," resulting in Martin then and there "with all his might" striking Jones in the face and otherwise manhandling him. They were separated by the employees of Jones-George Electric Company and by a Mr. Connelley, an employee of the dairy in charge of the equipment.

Within a very short span of time thereafter (the record does not disclose even an estimate), Jones, while still in the dairy, said to Martin, "I have always been able to settle my differences in a gentlemanly manner." Martin replied, "Then you mean to say I am not a gentleman." Jones replied, "That is exactly what I mean." Martin then said, "You haven't got enough, have you?" and he immediately started hitting at Jones, who hit back at Martin and slipped on the wet floor to his hands and knees, and while attempting to get up, was hit a severe blow on the side of his face by Martin. (Except for the statement of Martin, to wit, "You haven't got enough, have you?" we would be inclined to hold as a matter of law that as to the second assault and battery, Martin was acting to resent what he considered a personal affront, and that he was not acting in the scope of his authority.)

In stating the facts, we have, of course, stated them most favorably to the respondent, in fact almost entirely from the testimony of the respondent himself.

The appellant seeks to recover against Mrs. Elbert on the principle of respondeat superior. "The reason which has supported the principle of respondeat superior, based upon the judicial interpretation and declaration of public policy, is that the principal, selecting his agent and directing the manner in which he shall execute the agency, should in justice to third persons with whom the agent may deal, and who are not responsible either for his selection or conduct, be held liable for his torts." *Sams v. Arthur,* 135 S. C. 123, 133 S. E. 205, 208.

In *Cantrell v. Claussen's Bakery,* 172 S. C. 490, 174 S. E. 438, 440, the Court stated:

"If the servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment, although he may exceed his authority. If there is doubt as to whether or not the servant, in injuring a third person, was acting at the time within the scope of his authority, the doubt will be resolved against the master, at least to the extent of requiring the question to be submitted to the jury for determination."

The case of *Lazar v. Great A. & P. Tea Co. et al.,* 197 S. C. 74, 14 S. E. (2d) 560, is analogous to this case. Lazar conducted a small grocery store. He saw one of his customers, to whom he had extended credit, coming out of the A. & P. store with bundles, and reproached this customer for trading with another without paying him. The customer claimed that he had bought goods for another. Lazar entered the A. & P. store and inquired of a clerk therein if the customer's statement was true. He then left the A. & P. store and returned to his own place of business. Soon thereafter, Small, the manager of the A. & P. store, appeared on the sidewalk at Lazar's store and called Lazar out and charged him with interfering with the cus-

tomers of the store of which he (Small) was manager. An argument ensued and Small committed an assault and battery upon Lazar.

Under the foregoing statement of facts, this Court held that it was a question for the jury whether Small was acting within the scope of his employment as manager of the A. & P. store at the time he committed the assault and battery on Lazar.

In *Adams v. South Carolina Power Co.,* 200 S. C. 438, 21 S. E. (2d) 17, 19, it is stated:

"We have held in numerous cases that if there is doubt as to whether the servant in injuring a third person was acting at the time within the scope of his authority, the doubt will be resolved against the master at least to the extent of requiring the question to be submitted to the jury for determination. *Hyde v. Southern Grocery Stores,* 197 S. C. 263, 15 S. E. (2d) 353; *Cantrell v. Claussen's Bakery,* 172 S. C. 490, 174 S. E. 438; *Matheson v. American Telephone & Telegraph Co.,* 137 S. C. 227, 135 S. E. 306.

"Under the doctrine of respondeat superior, it is generally held that the master is liable for the wrongful acts of his servant while acting as such within the scope of his employment. The principle is adhered to that an act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business. *Lazar v. Great Atlantic & Pacific Tea Co.,* 197 S. C. 74, 14 S. E. (2d) 560; *Holder v. Haynes,* 193 S. C. 176, 7 S. E. (2d) 833."

All of the foregoing cited cases are in line with the old, but frequently cited, case of *Polatty v. Charleston and Western Carolina Railway,* 67 S. C. 391, 45 S. E. 932, 100 Am. St. Rep. 750.

Applying the established law in this State to the facts as testified to by the appellant and his witnesses, it was the duty of the trial Judge to submit to the jury for its determination the issue whether at the time or times

Martin, the general manager of Mrs. Elbert's dairy and farm, struck the appellant, he was acting within the scope of his employment and in furtherance of her business; and it was error for the Court to conclude as a matter of law that Martin was not so acting, and direct a verdict in favor of the respondent, Mrs. Elbert.

"Judges shall not charge juries in respect to matters of fact, but shall declare the law." Section 26, Article 5 of the Constitution of 1895.

In construing this section of the Constitution, this Court has on numerous occasions held "that, not only must the formal charge to the jury be kept free from any statement of facts in issue or expression as to the weight and sufficiency of evidence * * *, but it has frequently been held that a trial Judge should not by the interrogation of witnesses, by remarks in ruling upon evidence offered, or by comment upon the facts in relation to interlocutory motions, indicate opinions or express views reasonably calculated to influence the jury in deciding a material issue of fact." A "judge may not become a participant in the verdict of the jury by indicating an opinion at any stage of the trial on an issuable fact." *Powers v. Rawls*, 119 S. C. 134, 112 S. E. 78, 83.

In *Watson v. Coxe Bros. Lumber Co.*, 203 S. C. 125, 26 S. E. (2d) 401, 403, it is stated:

"While there are numerous cases on this subject undertaking to interpret the precise intendment of this provision of the Constitution, we believe that the most succinct, and at the same time comprehensive and adequate statement of the governing law deducible from the various decisions of this court on this constitutional provision is contained in the opinion of the court written by that able jurist, the late and lamented Chief Justice Bonham, in *Haynes v. Graham*, 192 S. C. 382, 390, 6 S. E. (2d) 903, 906, wherein he stated, after a review of several cases, the rule of law to be: 'It is * * * the settled conclusion of this Court that the trial

Judge may not intimate to the jury his opinion on any contested issue of fact in the case before him'."

At the conclusion of appellant's testimony on direct examination, in which he had gone fully into all of the relevant facts, the following took place:

"By the Court: Q. Was anything used in the fight except fists? A. No, sir.

"Q. No weapon of any kind? A. No. One was attempted to be used but it was not.

"The Court: Old fist and skull."

Appellant takes the position that this examination of ■ the witness and remark by the trial Judge were prejudicial "not only as expressing an opinion from the trial Judge as to the extent of the injuries sustained by the plaintiff (appellant); but as indicating that there was only a mutual fist fight between the plaintiff (appellant) and the defendant (Martin)."

The appellant and his witnesses had testified that the respondent, Martin, had committed two separate and distinct assaults and batteries upon the appellant, but that in neither instance did he use a weapon; and the injuries suffered by the appellant had been described in detail. It would of course have been better if the trial Judge had not used the homely expression, "Old fist and skull," but in the light of the testimony as to the injuries suffered by the appellant, it would be hypercritical to read into the statement of the trial Judge an expression or intimation of his opinion as to the extent of the injuries inflicted upon the appellant.

The appellant had further testified that in the beginning of the second assault upon him by Martin, he had attempted to strike Martin, and hence it was that the trial Judge referred to a "fight," rather than adhering to the more or less technical language of "assault and battery." The jury could not have understood that the trial Judge was indicating as his opinion that there was only a mutual combat; and in the

colloquy which occurred between counsel for appellant and the trial Judge when the latter was charging the jury, and which will be hereinafter referred to, the trial Judge cleared the minds of the jury as to what he meant by the use of the word "fight."

In the trial Judge's charge to the jury he stated:

"So now, gentlemen, what is right between man and man in this case? Now this case—what is it about—about a fight that these men have had. I am glad that no weapons were used. I am glad that only nature's weapons were used and the case is not being tried on the Criminal side of the Court but on the Civil side where they have a right to try it and the action has been brought against Mrs. Elbert and Mr. Martin to recover $25,000.00 for an assault and battery—actual damages and punitive damages. The plaintiff comes into Court and alleges that this blow or blows were struck, that he was damaged actually and then he claims punitive damages and says, I am entitled to recover $25,000.00 by reason of these injuries."

The appellant alleges that this charge was "highly prejudicial to the plaintiff in that it belittled the plaintiff's (appellant's) cause and praised the defendant (respondent) Martin for using 'nature's weapons', and emphasizing that it was not even being tried by the criminal courts; but was rather a personal, mutual engagement, which the word 'fight' clearly indicates; and it eliminated the assault with the milk bottle." And that this error was emphasized, when prior to concluding his charge and after several matters in connection therewith had been called to the attention of the trial Judge by counsel for the appellant and for the respondent, the Court inquired, "Anything else?" and the following transpired:

"Mr. Busbee: Nothing else except this, if the Court please. The Court, in charging the jury in your preliminary remarks, you said that this was a fist fight between the plaintiff here and the defendant. Of course, I want to call the at-

tention of the Court to that remark because it is contended by the plaintiff that this is not a fist fight but was an assault and battery by the defendant upon the plaintiff.

"The Court: Just a battery.

"Mr. Busbee: Your Honor said 'just a fist fight', and I am sure Your Honor would not want that to go to the jury without some explanation about that because we are not alleging that it was just a fist fight.

"The Court: Oh, yes, sir; what do you want me to tell the jury?

"Mr. Busbee: I would like for you to explain to the jury, your Honor, that you are not telling them it is just a fist fight for they have heard the testimony.

"The Court: I am not telling them anything at all. It is admitted here that no weapons were used. Is that correct?

"Mr. Busbee: That is correct, and it is admitted that a blow was struck.

"The Court: That isn't telling them—wouldn't that be a fist fight, if a blow was struck?

"Mr. Busbee: I don't believe it would, sir. It sounds like mutual combat to me. A mutual combat and fight.

"The Court: No, no, that isn't the law of mutual combat. You are of the younger generation. When I was a school boy, we had these fist fights every day and I am glad to say there were no weapons used, but it is admitted that there was a blow and that constitutes a battery.

"Mr. Salley: Your Honor might charge the jury the facts are all for them to pass on.

"The Court: Oh, yes, sir. It is a question for you to find out what happened there and it is a question, if you find damages, how much damages. All of those things are for you— for your consideration. The law does not allow me to pass on any question of facts and I am not intimating any view I may have of this case. I am trying to tell you what the law is."

Apparently counsel for appellant is wholly responsible for the trial Judge's referring to the assault and battery as a "fist fight," as he used this expression, inadvertently of course, three times prior to its adoption by the trial Judge; but the trial Judge then told the jury, at the suggestion of counsel for the respondent, Martin, that the law did not allow him to pass on any question of fact in the case, and that he was not intimating any view he may have of the case; that he was trying to tell them "what the law is."

Appellant's complaint and testimony precluded the jury from basing a verdict for damages against the respondent Martin by reason of the "milk bottle" episode, and therefore the Judge's charge could not have "eliminated the assault with the milk bottle."

We have carefully read and reread the charge of the trial Judge and his colloquy with appellant's counsel, and are unable to perceive wherein the Judge belittled the appellant's cause of action, or praised the respondent Martin for not using a weapon, or expressed any opinion on the facts of the case.

The reasonably substantial verdict rendered under the circumstances of this case is indicative that the jury understood that it was the arbiter of the facts and that it was not affected by the remarks of the trial Judge in reminiscing about his school days; and, further, the record shows that such remarks were personal and directed to counsel for appellant and constituted no portion of his charge to the jury although made in its presence.

The Judge, let us repeat, was careful to tell the jury: "The law does not allow me to pass on any question of facts and I am not intimating any view I may have of this case. I am trying to tell you what the law is."

Appellant's exception 3 has not been argued and is, therefore, deemed to be abandoned.

Appellant's exception 6 does not comply with Section 6 of Rule 4 of this Court, and therefore will not be considered.

The judgment appealed from is reversed, and the case is remanded to the Circuit Court for a new trial as to Mrs. Elbert, but is affirmed as to the respondent Martin.

FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur..