The **STATE OF SOUTH CAROLINA,**
Appellee,

v.

**James Edward MOORE, Appellant.**

No. 14042.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1970.

Decided Sept. 8, 1971.

---

Butzner, Circuit Judge, concurred in part and filed opinion.

Paul Bender, Washington, D. C. (Court-assigned counsel) [Ralph S. Spritzer and James A. Strazzella, Philadelphia, Pa. (Court-assigned counsel) on the brief], for appellant.

Emmet H. Clair, Asst. Atty. Gen. of South Carolina (Daniel R. McLeod, Atty. Gen. of South Carolina, and C. Pinckney Roberts, Asst. Atty. Gen. of South Carolina, and B. O. Thomason, Jr., Sol., Greenville, S. C., Thirteenth Circuit, on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and LEWIS, District Judge.

HAYNSWORTH, Chief Judge:

This appeal presents a procedural tangle arising out of the Civil Rights Removal statute.[1]

1. 28 U.S.C.A. § 1443(1).

Late in the eleventh hour, Moore undertook the removal of a murder prosecution he was facing in a state court. In the removal petition he admitted his commission of the homicide, but claimed he had employed only reasonable force in meeting an assault upon him by a white man resentful of Moore's presence in a place of public accommodation. Without a hearing, the District Judge remanded the case to the state court, but only after Moore's trial had proceeded in the state court to a conviction of manslaughter and the imposition upon him of a sentence of twelve years suspended upon the service of three years with five years probation.

We conclude that the homicide prosecution was not removable, but that the proceedings in the state court in the interval between the filing and service of the removal petition and the remand order were void. Accordingly, we will direct the issuance of a writ of habeas corpus requiring Moore's release from custody subject to the state's right to retry him.

Moore, a black man, was indicted on a charge of murder during the October 1968 term of the Court of General Sessions of Greenville County, South Carolina. Released on bail, he obtained an attorney to represent him. He discharged his lawyer in May 1969 and employed another. The second lawyer sought and obtained a continuance of the case until July in order to prepare himself. On the eve of trial in July, Moore discharged the second lawyer, and the trial was again postponed until August 25, 1969.

On the morning of August 25, 1969, the third lawyer whom Moore had retained filed a removal petition in the District Court, filed a copy in the office of the clerk of the state court and served a copy on the state prosecutor. Confronted with that situation when the state court convened at 10:00 A.M., the judge, nevertheless, ordered the trial to proceed. The next day, Moore filed in the District

Court a petition for a writ of habeas corpus and an order staying further proceedings in the state court, but this petition did not receive the immediate attention of a district judge, and the trial in the state court continued to its conclusion. As noted above, he was convicted of manslaughter and received an active sentence of three years imprisonment with subsequent probation.

Later the District Judge considered the removal petition, concluded it was facially insufficient and remanded the case to the state court. The order denied all other relief sought.

I

In the removal petition, Moore alleged that he was engaged in the peaceful exercise of his rights under Title 2 of the Civil Rights Act of 1964, seeking service in the Waffle House, a place of public accommodation in Greenville, South Carolina, when a white person "by violence, threat and intimidation attempted to and did interfere and oppress the petitioner for the purpose of depriving the petitioner of [his equal rights]. As a result of the petitioner's reasonable effort to preserve his own life and enjoy rights protected by Title 2 of the Civil Rights Act of 1964, the person who attempted to interfere therewith lost his life. * * *"

Moore thus makes no claim of noninvolvement in violence. In the removal petition, he admitted his commission of the homicide for which he was indicted, but sought to justify it, somewhat equivocally, as having been done in self-defense and in aid of his exercise of his protected right of equal access to a place of public accommodation. To the extent that the petition may be construed as an attempt to justify the homicide by a claimed right of forceful self-help in seeking to exercise rights guaranteed by the Civil Rights Act of 1964, it is obviously deficient, for the Act confers no such right of self-help.[2] In this appeal, Moore's counsel concedes as much, but construes that part of the petition as ex-

2. *See* Hamm v. City of Rock Hill, 379 U.S. 306, 311, 85 S.Ct. 384, 13 L.Ed.2d 300.

pressing only the claim that the right of self-defense has a federal origin in the Civil Rights Act of 1964. For present purposes, we may accept that construction of the petition.

It is important at the outset, however, to emphasize that there was admitted violence. Moore's acknowledgment of his commission of the homicide distinguishes this case from every other criminal prosecution successfully removed from a state to a federal court.

■ Prerequisite to a removal of a pending criminal prosecution under 28 U.S.C.A. § 1443(1) [3] is a showing that the defendant is being denied rights guaranteed under a federal law "providing for specific civil rights stated in terms of racial equality." [4] The defendant must show that there is a basis for a firm prediction that such rights will be denied in the state court or that the pendency of the prosecution without more, is a deprivation of such a federally protected right. It is not enough to show that he has a defense with more or less hope of its successful assertion in an impartial tribunal; he must show that his federally secured right of racial equality is denied by the pendency of the proceeding or "by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." [5]

■ Moore's petition does not meet those requisites.

The Georgia v. Rachel, City of Greenwood v. Peacock dialogue, of course, governs our decision. It, too, illuminates our path. Federally protected rights of racial equality are not to be inhibited by state prosecutions, however characterized, for conduct which clearly enjoys the federal protection. One who peaceably seeks to enjoy his federally guaranteed right of free access to a place of public accommodations is not subject to state prosecution for trespass, for incitation to riot, a breach of the peace or any other charge that alleges no more than a peaceful exercise of a federally guaranteed right.[6] *Rachel* gives such persons a clear right of removal and an immunity from state prosecution on any charge which might be sustained by proof of conduct within the federal protection.

■ It is plain from *Peacock*, however, that the right of removal under § 1443(1) is limited to cases in which the charged conduct clearly enjoys federal protection. The distinction was foreshadowed in *Hamm* [7] in which the emphasis was all upon the peacefulness of the defendants' conduct and the federal protections it enjoyed. But just as there is no federal law conferring upon anyone the right "to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license or to bite a policeman," [8] so there is no federal law giving any private citizen the right to take another's life. If the civil rights worker who allegedly bit the policeman could be prosecuted in a state court for assault, as the Supreme Court

3. "Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof."

4. Georgia v. Rachel, 384 U.S. 780, 792, 86 S.Ct. 1783, 1790, 16 L.Ed.2d 925.

5. City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 828, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944.

6. See Achtenberg v. Mississippi, 5 Cir., 393 F.2d 468; Walker v. Georgia, 5 Cir., 417 F.2d 1.

7. Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300.

8. City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 826–827, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944.

held, surely he could be prosecuted for homicide had he slain the policeman.

■ It has been the uniform holding or assumption of all of the cases in the lower courts that the Civil Rights Acts extend their protections only to peaceful conduct. Violence, whether justifiable or not under state law, is beyond their reach. In several cases in the Fifth Circuit where persons have been charged with unlawful acts of violence, but the defendants claimed they had committed no violence and were being prosecuted solely for peaceful attempts to exercise federally protected rights, removability has been held to turn on a resolution of that issue.[9] The prosecution is removable, the Court of Appeals for the Fifth Circuit holds, if the defendant is *actually* being prosecuted solely for peaceful, protected conduct, but not if he has committed some act of violence. *Peacock* clearly delineated the distinction.

Wyche v. Louisiana, 5 Cir., 394 F.2d 927, presented a situation much like that here. *Wyche sought to remove a prosecution for aggravated burglary. An essential element of the offense was an unlawful entry of a truck stop, which Wyche claimed he had entered solely for the purpose of enjoyment of his right of equal access to a place of public accommodation as guaranteed by the Civil Rights Act of 1964.[10] The Court agreed that, under those circumstances, Wyche could not be prosecuted for any offense requiring proof of an unauthorized entry, but it made it plain that the state could proceed against him on a charge of assault which Wyche allegedly committed after entering the truck stop. Again, it is plain that, had Wyche killed the victim of his alleged assault, the Fifth Circuit would have held him subject to state prosecution for the homicide.

The Civil Rights Act of 1964 conferred upon Moore the legal right to be where he was, and the Supremacy Clause assured it even had state law denied it. Concededly now, however, it gave him no right of self-help. If he was met with force or threats of force from the proprietor, employees or fellow patrons, he had substantial legal remedies. South Carolina law provided both civil [11] and criminal [12] sanctions for such a violation of Moore's rights. He also had a civil right of action in the federal courts, in which, had he succeeded, he would have been entitled to recover attorneys' fees and costs, as well as damages.[13]

South Carolina law also provides a defense to a homicide charge if the defendant used reasonable force in the protection of his own life.[14] The defense, recognized by the state, fully comports with federal law. When one kills another he has no federal constitutional complaint that the burden of proof of an affirmative defense, such as self-defense, is placed upon him. The same burden of proof must be borne by the householder who slays an intruder or the proprietor of an establishment who kills an unruly patron. Life is not to be taken lightly, and there is no constitutional command that one claiming justification should not have the burden of proving it.

---

9. Griffin v. Louisiana, 5 Cir., 395 F.2d 991; Walker v. Georgia, 5 Cir., 405 F.2d 1191; Walker v. Georgia, 5 Cir., 417 F.2d 5. *See also* Achtenberg v. Mississippi, 5 Cir., 393 F.2d 468; Whatley v. City of Vidalia, 5 Cir., 399 F.2d 521; Walker v. Georgia, 5 Cir., 417 F.2d 1. Whether or not a district court is properly required to resolve such a factual issue when considering a removal petition, or whether it may confine its view to the allegations of the state charge if they unequivocally charge violent conduct, is a matter we need not now consider, since Moore admits his fatally violent act.

10. 42 U.S.C.A. § 2000a(a).

11. Lazar v. Great Atlantic & Pacific Tea Company, 197 S.C. 74, 14 S.E.2d 560; Jones v. Elbert, 211 S.C. 553, 34 S.E.2d 796.

12. State v. Hariott, 210 S.C. 290, 42 S.E.2d 385.

13. 42 U.S.C.A. § 2000a–3.

14. City of Gaffney v. Putnam, 197 S.C. 237, 15 S.E.2d 130; State v. Osborne, 202 S.C. 473, 25 S.E.2d 561; State v. Harvey, 220 S.C. 506, 68 S.E.2d 409.

Nor is there anything in the claim that the Civil Rights Acts imply a federal forum for this kind of defense. Nothing in the statutes suggest it. Their purpose does not require it. If there were a claim that the state court would not fairly consider such an affirmative defense it would present a different question, but there is no such claim. The fact that Moore was convicted only of manslaughter and received an active sentence of only three years suggests a state judicial determination of substantial provocation of Moore's conduct. It certainly does not suggest an obliviousness to a claim of self-defense.

Finally, we find no merit in the suggestion that a federal forum for the trial of the self-defense claim must be read into the Civil Rights Act of 1964 in order to make it effective. The Congress apparently did not think so, and we cannot believe that peaceable blacks would be deterred from seeking service in a place of public accommodation by the possibility that a state court prosecution for homicide may result from a violent assault causing death or that there may be triable state charges of simple assault, if there is an assault causing no permanent injury. Law abiding persons simply do not enter such establishments with a purpose of committing assaults. If there is interference with their protected rights, they have legal remedies, outlined above, to which they should resort, not to violent physical self-help.

While the Civil Rights Act of 1964, therefore, gave Moore the legal right to be where he was, his killing another man, however justifiable under state law, derives no legitimacy from any federal law providing for equal civil rights. A trial on the merits on the homicide charge in the state court would work no denial of any right under a law providing for equal civil rights within the meaning of 28 U.S.C.A. § 1443(1).

We conclude that the prosecution was improperly removed to the federal court. The District Judge properly remanded the case when it came to his attention.

## II

■ Moore was tried and convicted in the interim between the filing and service of the removal petition and the remand order. We reluctantly conclude that the proceedings were void.

The governing statute, 28 U.S.C.A. § 1446(e), provides that when a removal petition is filed in the district court, a copy is filed with the clerk of the state court and the adverse parties notified, those acts "shall effect the removal and the State court shall proceed no further unless and until the case is remanded."

It has been argued appealingly that continuing proceedings in the state court should be held voidable rather than void and validated if the case is subsequently remanded to the state court. Such a holding, indeed, would be a deterrent to the filing of frivolous removal petitions at the last minute for the purpose of delaying or disrupting judicial proceedings in a state court. The explicit language of the statute and its uniform construction, however, convince us that the argument must be rejected.

Prior to the 1948 revision of the Judicial Code, removal procedure in civil rights cases was governed by 28 U.S.C.A. § 74. Section 76 governed removal procedure in suits against, or prosecutions of, federal officers, while § 72 prescribed the removal procedure in other cases. Section 76, the federal officer section, provided for the filing of the removal petition in the District Court and contained an express provision that any subsequent proceedings in the state court would be void. Sections 72 and 74, on the other hand, provided for the filing of a removal petition in the state court. They contained provisions proscribing further proceedings in the state court after the filing of the petition, but it was soon recognized by the Supreme Court that some judicial action in the state or federal court was required to effect the removal, and that the filing of the petition in the state court was not enough. This led to the conclusion that if the facts stated in the removal petition were

insufficient for removal, the state court could ignore the petition, and proceedings conducted in the state court in the interval between the filing of the petition and a subsequent federal remand order were not invalid.[15]

The question then is whether the 1948 revision of the Judicial Code, in which a combination of old §§ 72, 74 and 76 into new § 1446 [16] was accomplished, worked a change in the *Rives-Metropolitan* rule.

At the time of the 1948 revision the new requirement that the petition be filed in the district court, rather than in the state court under the old §§ 72 and 74 procedure, occasioned comment in the Judicial Conference of the United States [17] by the Revisers,[18] by witnesses testifying before Congressional committees,[19] and by scholarly commentators.[20] None of them seemed to have focused attention upon the effect of the new procedure upon the *Rives-Metropolitan* rule, and we have been unable to find anything in the legislative history of § 1446 which is illuminating.

It is clear, however, that § 1446, in providing for the filing of the petition in the district court while promptly thereafter filing a copy in the state court and giving notice to adverse parties was de-signed to make the removal effective by the performance of those acts. The removal was no longer dependent upon any judicial act in any state or federal court. The new procedure effectively reversed the premise underlying the *Rives-Metropolitan* rule.

Since the adoption of § 1446, it has been uniformly held that the state court loses all jurisdiction to proceed immediately upon the filing of the petition in the federal court and a copy in the state court.[21] Under these holdings any proceedings in the state court after the filing of the petition and prior to a federal remand order are absolutely void, despite subsequent determination that the removal petition was ineffective. This rule has been accepted by numerous scholarly commentators as a correct statement of existing law under § 1446.[22]

Since the change in the procedure carries with it strong indication of that result, which since 1948 appears uniformly accepted, we are impelled to the conclusion that Moore's trial and conviction in the state court, occurring after the removal petition was filed and prior to the remand order, was void. It follows that a writ of habeas corpus should issue com-

15. Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667; Removal cases, 100 U.S. 457, 474, 25 L.Ed. 593; Metropolitan Casualty Insurance Company v. Stevens, 312 U.S. 563, 61 S.Ct. 715, 85 L.Ed. 1044.

16. 28 U.S.C.A. § 1446 was enacted in 1948 in substantially its present form. The only change in § 1446(e) occurred in 1949, when the initial words "Promptly after" were substituted for "Upon" and the words "and until" were inserted after "unless" in the concluding phrase "unless the case is remanded." The first of these modifications is explained in the notes of the revisers. No mention is made in the notes of the second alteration.

17. See Galston, An Introduction to the New Federal Judicial Code, 8 F.R.D. 201, 203.

18. See Holtzoff, The New Federal Judicial Code, 8 F.R.D. 343, 345–346; Barron, The Judicial Code: 1948 Revision, 8 F.R.D. 439, 443.

19. See Hearings on H.R. 1600 and H.R. 2055 before Subcommittee No. 1 of the

House Committee on the Judiciary, 80th Cong., 1st Session, ser. 2 (1947).

20. H. Wechsler, "Federal Jurisdiction and the Revision of the Judicial Code" in The Federal Courts; a Symposium, 13 Law and Contemporary Problems 1, 216. Note: The Proposed Revision of the Judicial Code, 60 Harvard L.R. 424.

21. See, e. g., Hopson v. North American Insurance Co., 71 Idaho 461, 233 P.2d 799; State ex rel. Gremillion v. NAACP, La.App., 90 So.2d 884; Bean v. Clark, 226 Miss. 892, 85 So.2d 588; State v. Francis, 261 N.C. 358, 134 S.E.2d 681; Schuchman v. State, Ind., 236 N.E.2d 830; Adair Pipeline Co. v. Pipeliners Local Union No. 798, 5 Cir., 325 F.2d 206.

22. ALI, Study of the Division of Jurisdiction Between State and Federal Courts, tentative draft 5, 239–40; Wright, Federal Courts, 2d ed., 141; Barron & Holtzoff, Federal Practice and Procedure (Wright ed.) § 107; Moore, Federal Practice, paragraph 0.168 [3.–8].

manding Moore's release, subject to the state's right to retry him.

We are concerned that this construction of § 1446 makes it susceptible to substantial abuse by individuals seeking to interrupt or delay state trials. Since § 1443 permits the filing of a removal petition at any time before trial in a state court, the conclusion that subsequent proceedings in the state court, before remand, are absolutely void creates a great potential for disruption of judicial proceedings in the state courts. It permits one wishing to delay a state trial to do so, even though his removal petition is subsequently found to be frivolous. It is a situation which deserves congressional attention, for that kind of disruption of state court proceedings seems wholly unnecessary and unwarranted. There are many approaches an amendatory statute might take. Perhaps the one which would best preserve the utility and protect the purposes of the Civil Rights Removal Act would be a provision foreclosing the right to file such a removal petition within a ten-day period preceding any scheduled trial, provided the defendant had failed to act earlier after a reasonable opportunity to obtain and consult a lawyer. Perhaps by statute Congress could simply revive the *Rives-Metropolitan* rule, so that a state court might proceed at its own risk, knowing that a subsequent remand order would validate its proceedings. If the state judge thought the petition frivolous, he might well conclude to go on with the proceedings in the state court. The solution, however, appears one for congressional choice.[23]

The order of remand is affirmed. Denial of habeas corpus relief is reversed and the case remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part.

BUTZNER, Circuit Judge (concurring):

I concur in Part I of the court's opinion, but with deference I suggest that the test for removability is an amalgam of status and conduct. The crucial inquiry is whether the state recognizes Moore's right to accommodation under the Civil Rights Act of 1964 or treats him as an intruder. The distinction is vital to a plea of self-defense. Cf. Wyche v. Louisiana, 394 F.2d 927 (5th Cir. 1967). However, in the absence of an allegation in the removal petition that because of race South Carolina will deny Moore the status of a business invitee in weighing his plea of self-defense, I join in the opinion of the court.

I fully concur in Part II. This case is one of many that illustrates the desirability of a statute or an amendment to the Rules of Criminal Procedure that will reasonably limit the time in which a petition for removal may be filed.

---

23. The problem is not acute if the state court is sitting where a federal judge is readily available, the removal petition is promptly brought to his attention, he recognizes it as an attempt to delay or disrupt the state court proceedings and promptly files a remand order. State courts, however, sit in many places in which federal judges are not readily available or are not always so. In such situations, the present statute, without the moderation of the *Rives-Metropolitan* rule, does permit a party seeking to do so to seriously delay and disrupt state court proceedings by filing a removal petition, though the removal claim, itself, be frivolous.