INMATES OF MIDDLESEX COUNTY, et al., Plaintiffs,

v.

John C. DEMOS, et al., Defendants.

UNION COUNTY JAIL INMATES, et al., Plaintiffs,

v.

V. William DiBUONO, et al., Defendants.

Civ. Nos. 81–862, 81–863.

United States District Court, D. New Jersey.

Aug. 5, 1981.

Stanley C. Van Ness, New Jersey Public Advocate, Trenton, N. J. by Jeffrey A. Mintz, Asst. Public Advocate, Trenton, N. J., Director, Office of Inmate Advocacy, for plaintiffs in both cases.

Lewis B. Kaden, Perth Amboy, N. J., for defendant Judges of the New Jersey Superior Court. (Demos and Bachman in Civ. 81–862) (DiBuono, Barbieri and Dawson in Civ. 81–863).

John J. Hoagland, County Counsel, Middlesex, N. J. by Florence J. Lotrowski, Deputy County Counsel, East Brunswick, N. J., for defendants-third party plaintiffs Feconda, Daly, Johnson, Capestro and Pelly, in Civil 81–862.

Robert C. Doherty, County Counsel, Union, N. J., for defendants-third party plaintiffs Froelich, Scanlon, Jefferson, Cinnot and Albanese in Civil 81–863.

James R. Zazzali, Atty. Gen. of New Jersey, Trenton, N. J. by Joseph T. Maloney, Deputy Atty. Gen., Section Chief, Human Services and Corrections Section, Trenton, N. J., for third-party defendant Fauver in both cases.

## OPINION

HAROLD A. ACKERMAN, District Judge.

These two class actions were filed pursuant to 42 U.S.C. § 1983 by inmates of the county jails in Union and Middlesex Counties seeking a remedy for allegedly unconstitutional overcrowding in those two institutions. Injunctive and declaratory relief is sought. They are represented in both suits by the New Jersey Department of the Public Advocate. Two types of defendants are named in the suits: jail administrators and judges of the New Jersey Superior Court. Third party complaints have been filed by the jail administrators in both cases naming William H. Fauver, the Commissioner of the New Jersey Department of Corrections as a third-party defendant. The cases are before me today on the defendant judges' motion to dismiss this lawsuit as against them.

■ The United States Supreme Court has never answered the question of whether state court judges are immune from suits for injunctive relief brought pursuant to § 1983. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 735 n. 14, 100 S.Ct. 1967, 1976 n. 14, 64 L.Ed.2d 641 (1980). The Circuit Courts of Appeals are divided on this question. *See* cases collected *Id.,* 719, 735 n. 13, 100 S.Ct. 1967, 1976 n. 13. Although the Third Circuit has never conclusively addressed this issue, there is authority within the Circuit for the proposition that state court judges are not completely immune from suits for injunctive relief under § 1983. *Conover v. Montemuro,* 447 F.2d 1073, 1094–1104 (3d Cir. 1973) (en banc) (Gibbons concurring); *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 146 (E.D.Pa.1977) (Chief Judge Lord). I am persuaded by Judge Gibbons' reasoning in the *Conover* case that state court judges are not entirely immune from suits seeking injunctive relief. *See also Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (". . . judicial immunity was not designed to insulate the judiciary from all aspects of public accountability").

Nevertheless, it seems clear that the power to grant injunctive relief against state court judges is one that must be used sparingly and only in cases that truly require the use of that extraordinary remedy in order to remedy ongoing Constitutional violations. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). As the *O'Shea* case makes clear, this conclusion is mandated not only by general equitable principles but by "the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Id.* at 500, 94 S.Ct. at 678 *quoting Stefanelli v. Minard,* 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951). The strong reluctance of the federal courts to involve themselves through the use of injunctions in anything directly related to the ongoing criminal enforcement of state laws has been reinforced by the Supreme Court in decisions like *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) and by the Third Circuit in decisions like

*Lewis v. Hyland,* 554 F.2d 93, 97–101 (3d Cir. 1977). *See also* Tribe, *American Constitutional Law* § 3–41 (Preserving State Institutional Autonomy: The Younger Doctrine) at pp. 155–56 (1978). From these cases it can be concluded that injunctive relief can only be ordered against a judge if he or she is directly and personally responsible for the complained of unconstitutional actions or conditions. It is against this background that the present motion must be considered.

■ According to the plaintiffs' brief in opposition to this motion, "these suits were designed to focus very directly and very discretely on the sole issue of overcrowding, and only the immediate and direct consequences thereof, particularly with regard to access to essential activities such as medical care, exercise and legal representation." Plaintiffs' Brief at 1. Further, the complaint "seeks relief of a systemic nature." *Id.* at 6. The plaintiffs' argument for the retention of the judges as defendants in this lawsuit is bottomed on a common sense proposition:

> The judges are an integral part of the penal system, and would be required to act in effectuating any relief of the problems which form the basis of this suit. It is, therefore, a practical consideration which makes their retention necessary .... Since the judges cannot be disassociated from jail population levels, their presence in this litigation is essential.

*Id.* at 9.

I admit that there is a lot of merit in the plaintiffs' common sense approach to the problems of remedying unconstitutional jail overcrowding *if and when* this court concludes that such overcrowding exists. In their present stance these cases join together the four groups most intimately involved in the county jails: the officials who directly administer them, the judges whose orders either send a person to jail or release a person therefrom, the State Department of Corrections which is charged with responsibility for some of the county jail inmates, and the prisoners themselves. It is obvious

to me that the plaintiffs are correct when they state that "no one goes to jail [in New Jersey] for more than a few hours without the opportunity for judicial review of the question of whether or not he or she should continue to be confined." *Id.* at 7. Nor do I doubt that the defendant judges have the power to act in order to reduce the inmate population of the county jails. Indeed, both sides to this litigation point to recent actions taken by one of the defendant judges, Hon. V. William DiBuono, the Assignment Judge of Union County, with just that goal in mind.

Nevertheless, despite these practical considerations, I have decided that the judicial defendants must be dismissed from this lawsuit. While it is true that actions of the judiciary directly affect who is sent to jail and who is let out, the fact remains that the complaint alleges no constitutional violations on the part of the judges. It is not, for example, alleged that bail, sentencing or calendar control practices in these counties are unconstitutional. It is simply alleged that, for a variety of reasons, the county jails have become overcrowded to the point of violating the Constitution. If the jails are inadequate to handle the prisoners sent to them, that failure is not attributable to the judges. The judges are simply executing their lawful roles in the criminal justice system. It is the administrators of the jail who must be viewed as responsible. Both sides to this litigation agree that in all previous overcrowding cases relief has been granted without the involvement of judges, with orders directed to prison administrators. If the plaintiffs are successful in this suit then similar relief can be obtained from this Court. It is true that relief that may be granted here will have an indirect affect upon the state judiciary. For example, an order from this Court mandating release of pretrial detainees being held for bail of less than $1,000.00 would countermand state court bail orders and might even result in the failure of the detainee to appear for trial. Indeed, it might be argued that less interference would be present if the judges were ordered to exercise their own discretion in enforcing a constitutionally required population cap rather than requiring the prison administrators to apply a federal court formula, such as the one hypothesized above, in determining who to release. The fact remains, however, that any such cap, enforced by state judges pursuant to a federal court order, would require ongoing federal supervision of the type frowned upon in *O'Shea*. Where the judges themselves are not alleged to have directly and personally engaged in unconstitutional conduct, I must conclude that the possible convenience of including them in the remedy portion of the trial is outweighed by the comity considerations stressed in *O'Shea*.

The judges' motion will, therefore, be granted. Counsel will submit an appropriate order.